# United States Court of Appeals
## For the First Circuit

---

Nos. 23-1288
     23-1333

PAULO TRINDADE,

Plaintiff, Appellee/Cross-Appellant,

v.

GROVE SERVICES, INC.; VICTOR SPIVAK,

Defendants, Appellants/Cross-Appellees.

---

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Allison Burroughs, U.S. District Judge]

---

Before

Montecalvo, Lynch, and Rikelman,
Circuit Judges.

---

Irwin B. Schwartz, with whom BLA Schwartz PC was on brief,
for appellants/cross-appellees.

David B. Summer, with whom Law Office of David B. Summer,
Alan D. Meyerson, and Law Office of Alan David Meyerson were on
brief, for appellee/cross-appellant.

---

January 12, 2024

---

**RIKELMAN**, <u>Circuit Judge</u>. Convinced that he had been short-changed on his sales commission compensation, Paulo Trindade sued his former employer for breach of contract and violations of the Massachusetts Wage Act. Following a bench trial, the district court ruled in part for Trindade and in part for the employer, Grove Services, Inc., awarding Trindade $330,597 in damages. Both parties appealed. Grove focuses its challenge on Trindade's Wage Act claim, which accounts for the bulk of the damages award, arguing that the district court was wrong in concluding that this claim, first asserted in Trindade's amended complaint, was timely because it relates back to his original complaint. Grove further objects to the amount of the damages award. Trindade also finds fault with the damages award, contending that he was entitled to more money.

We agree with the district court that, under Massachusetts law, Trindade's amended complaint relates back to his original complaint. We also conclude that the record abundantly supports the district court's decisions to award the damages it did and to decline to award more based on Trindade's preferred calculation. Therefore, we affirm the district court's judgment.

## I. BACKGROUND

### A. Relevant Facts

Our review follows a bench trial, so we give due deference to the district court's findings of fact in describing the dispute between the parties. *See* Duval v. U.S. Dep't of Veterans Affs., 69 F.4th 37, 38 (1st Cir. 2023).

Grove is an exporter of frozen meat products that is headquartered in Massachusetts. It also has offices in Atlanta, Georgia and cities abroad, as well as a distribution operation in Ukraine. Victor Spivak is Grove's owner and president and the primary salesperson for Russia and Ukraine. Trindade worked for Grove from 2010 to 2017 as the company's Product and Sales Director for Latin America, based in the company's Atlanta office.

Trindade's compensation plan was set out in a written employment contract with Grove, which provided that he would earn a base salary plus an annual sales commission. Any commission would be "equal to fifteen percent (15%) of the Net Profits attributable to [Trindade's] sales to the extent that such Net Profits exceed US $150,000." The contract contained a complex formula for calculating "Net Profits." But it stated, in essence, that Trindade's commission would equal the gross sales order amounts that he generated and managed, minus six categories of

deductions.[1]   The contract further stated that the commission
"shall be calculated . . . and paid to [Trindade] within sixty
(60) days after the relevant calendar year end."  This contract
remained in effect for the entirety of Trindade's employment with
Grove.

The parties' dispute centers on Trindade's sales
commissions for the years 2014, 2015, and 2016.  In 2014, Trindade
received a $47,647.46 sales commission, from which Grove deducted
$7,041 to fund his 401(k) account.  In 2015, he did not receive
any commission.  Although Trindade had his most profitable year in

---

[1] Specifically, the agreement stated that Grove would
calculate net profits as follows:

(a) the gross sales order amounts generated and managed
by [Trindade] (tracked by [Grove] under [Trindade's]
employee number), minus (b) the actual costs of goods
sold attributable to such sales orders, minus (c) all
transportation and freight charges relating to the
transportation of product and all storage charges,
demurrage charges, insurance and other costs and
expenses directly relating to such sales orders, minus
(d) a proportionate amount of the salary, bonus,
benefits and other compensation paid to or on behalf of
employees and consultants, including [Trindade], working
out of or for [Grove's] Atlanta office, minus (e)
proportionate amount of the overhead, costs and expenses
of [Grove's] Atlanta office and a proportionate amount
of the overhead, costs and expenses of [Grove]
reasonably apportioned to [Grove's] Atlanta office,
minus (f) a proportionate amount of all interest
expenses (internal or external) calculated as a function
of the working capital needs of [Grove's] Atlanta
office, and minus (g) a proportionate amount of a fifteen
percent (15%) return on the capital investment of
[Grove] in its Atlanta office.

2015, the company experienced overall loses due to instability in Russia and Ukraine.  As a result, Grove decided that it could not forgo a particular deduction when calculating Trindade's 2015 commission, although it had done so in previous years.  In 2016, Grove changed its commission calculation without renegotiating Trindade's employment contract.  It began using a new formula that it stated was designed to better incentivize employees, simplify calculations, and represent a fairer and more reasonable assessment of commissions.  The new formula eliminated the deductions Grove had previously applied to the net profit calculation.  But it also reduced the commission percentage from 15% of net profits to 7.5%.  Using this new formula, Grove paid Trindade a commission of $146,538 for 2016 -- $101,093 of which it paid after the deadline provided in the employment contract.  As in 2014, Grove deducted a 401(k) contribution -- in the amount of $6,759 -- from Trindade's commission payment for 2016.

Trindade ended his employment with Grove effective December 31, 2017.  On March 6, 2019, he filed a complaint for unpaid wages with the Massachusetts Attorney General's Office ("AGO").  The complaint stated that he had worked for Grove from 2010 to 2017 and that he was owed "unpaid commissions" from the company.  Five days later, Trindade received a letter from the AGO permitting him to sue Grove on his own behalf.

### B. Legal Proceedings

#### 1. Original Complaint and Amended Complaint

On April 15, 2019, Trindade brought a diversity action against Grove and Spivak (collectively, "Grove") in the District of Massachusetts. He alleged that Grove underpaid his commission for calendar year 2015. He asserted two claims: (1) violation of the Massachusetts Wage Act, based on Grove's failure to pay him the correct amount of his 2015 commission on time, and (2) breach of contract.

On June 15, 2020, Trindade filed a motion to amend his complaint. He asserted that he had discovered new Wage Act violations and breaches of contract through written discovery. Importantly, the amended complaint added allegations regarding his commission for calendar year 2016. Trindade alleged that Grove subtracted what was supposed to be a one-time deduction from his 2015 commission two years in a row, in 2015 and in 2016.[2] He further alleged that Grove reduced the amount of his 2016 commission from 15% of the net profits from his sales to 7.5%. Because of this invalid deduction and reduction, Trindade asserted, Grove failed to pay him the correct amount of his 2016

---

[2] Trindade explained in his motion to amend that, for calendar year 2015, Grove subtracted $315,900 from his commission to reflect an outstanding debt that one of his customers owed. He claimed that the $315,900 adjustment should have been a one-time deduction, but documents produced in discovery indicated that Grove made the same deduction for the next calendar year.

commission by the date set forth in the employment contract. Like the original complaint, the amended complaint contained two counts: (1) violation of the Massachusetts Wage Act, based on Grove's failure to pay the commissions due for the years 2015 and 2016 in a timely fashion, and (2) breach of contract, based on Grove's failure to compensate Trindade for his work in accordance with the terms of the employment contract for the years 2013 to 2016.

The magistrate judge granted Trindade's motion to amend. But she limited discovery on the new allegations in the amended complaint to a deposition of Grove's corporate witness.

## 2. Bench Trial

The case proceeded to a bench trial, after which the district court made four critical findings. First, Grove breached the employment contract by deducting $7,041 from Trindade's 2014 sales commission to fund his 401(k) account. Second, Trindade did not prove by a preponderance of the evidence that he was owed any commission in 2015 or that Grove engaged in improper calculations to conclude that no commission was owed. Therefore, he could not prevail on his 2015 claims. Third, Grove violated the Wage Act by (1) failing to pay Trindade his 2016 commission by the deadline provided in the employment contract and (2) improperly deducting from his 2016 commission its 401(k) contribution of $6,759 -- which represented an unpaid wage. Fourth, Grove was additionally liable

-7-

for breach of contract due to the late payment of Trindade's 2016 commission and the improper 401(k) deduction that year.

The district court awarded Trindade damages for the 2014 and 2016 breaches of contract and for the 2016 Wage Act violation. It determined that, due to the breach of contract as to the 2014 commission, Trindade was entitled to $7,041 in damages -- the amount Grove deducted from his commission to fund his 401(k). Further, it found that Trindade was entitled to $107,852 in late and unpaid wages as to the 2016 commission -- $101,093 that Grove paid after the deadline in the contract and $6,759 that Grove improperly diverted to his 401(k). The $107,852 was subject to mandatory trebling under the Wage Act, bringing the damages for the 2016 Wage Act claim to $323,556. Adding in the damages for the 2014 401(k) violation, the district court awarded Trindade $330,597 in total damages.

In arriving at the judgment, the district court rejected Grove's argument that the Wage Act claim premised on the late payment and underpayment of Trindade's 2016 commission was time-barred. It determined that the 2016 claim related back to the original complaint, which was filed well within the statute of limitations applicable to the 2016 claim. But the district court also found that Trindade had failed to prove that, because Grove cut his commission rate in half, from 15% of net profits to 7.5%,

he was entitled to an additional $146,538 in unpaid wages for that year.

This timely appeal followed.

## II. STANDARD OF REVIEW

"Following a bench trial, this Court reviews the district court's findings of fact with deference, overturning them only when clearly erroneous, but reviews its legal conclusions de novo." Rojas-Buscaglia v. Taburno-Vasarhelyi, 897 F.3d 15, 23-24 (1st Cir. 2018) (internal quotations and citation omitted). A "more flexible standard" governs mixed questions of fact and law. Markham Concepts, Inc. v. Hasbro, Inc., 1 F.4th 74, 79 (1st Cir. 2021). "The more fact intensive the question, the more deferential the level of review," and "the more law intensive the question, the less deferential the level of review." Id. (quoting In re IDC Clambakes, Inc., 727 F.3d 58, 64 (1st Cir. 2013)).

The parties dispute the applicable standard of review for the district court's relation-back decision. We do not dwell on this dispute, however, because we conclude that we would affirm under either abuse of discretion or de novo review. See Alison H. v. Byard, 163 F.3d 2, 4 (1st Cir. 1998) (concluding that it "ma[de] no difference" whether the court applied an abuse of discretion or de novo standard because reversal was warranted under either one).

As to the decision to award damages and the calculation of the damages amount, we review the district court's rulings for

-9-

abuse of discretion. <u>Banco Popular de Puerto Rico</u> v. <u>Asociación de Compositores y Editores de Música Latinoamericana (ACEMLA)</u>, 678 F.3d 102, 113–14 (1st Cir. 2012); <u>Rojas-Buscaglia</u>, 897 F.3d at 32–33. Under this standard, Grove and Trindade "must convince this Court that the district court 'committed a meaningful error in judgment.'" <u>Rojas-Buscaglia</u>, 897 F.3d at 24 (quoting <u>Lussier</u> v. <u>Runyon</u>, 50 F.3d 1103, 1111 (1st Cir. 1995)).

With these principles in mind, we turn to the parties' arguments on appeal.

### III. DISCUSSION

Both parties object to aspects of the district court's judgment. Grove argues that the district court erred in two ways: first, in finding that the Wage Act claim premised on Trindade's 2016 commission related back to the original complaint, and second, in determining that Trindade was entitled to damages.[3] Trindade, for his part, contends that the district court abused its discretion in not awarding him double the amount of commission for 2016. We address each argument in turn. Ultimately, we affirm the district court's relation-back decision and its damages award.

---

[3] Grove additionally argued in its opening brief that, according to relevant Massachusetts law, its payment of the 2016 commission was not late under the Wage Act. However, it abandoned that position at oral argument, so we do not address it.

-10-

**A. Relation Back**

We begin with Grove's contention that the Wage Act claim founded on Trindade's 2016 commission is untimely and that the district court erred in concluding that this claim relates back to the original complaint. We first discuss the applicable statute of limitations for claims brought under the Wage Act and then turn to the issue of relation back.

"The [Massachusetts] Wage Act imposes liability on employers who fail to pay wages earned by their employees." Ellicott v. Am. Cap. Energy, Inc., 906 F.3d 164, 169 (1st Cir. 2018) (citing Mass. Gen. Laws ch. 149, § 148 (2009)). The statute's purpose "is to protect employees and their right to wages by requiring employers to pay employees their wages in a timely fashion, according to the parameters set out in the statute." Parker v. EnerNOC, Inc., 139 N.E.3d 328, 333 (Mass. 2020) (internal quotations and citations omitted). Commissions are wages within the meaning of the statute when the amount has been "definitely determined" and has become "due and payable" to the employee. Mass. Gen. Laws ch. 149, § 148; see Okerman v. VA Software Corp., 871 N.E.2d 1117, 1122 (Mass. App. Ct. 2007). The statute creates a private right of action for employees and allows them to recover treble damages for lost wages, in addition to attorneys' fees and costs. Mass. Gen. Laws ch. 149, § 150 (2009).

"Wage Act claims are subject to a three-year statute of limitations that attaches separately to each individual violation of the act."  Ellicott, 906 F.3d at 170; see Mass. Gen. Laws ch. 149, § 150.  The statute of limitations period is tolled from the date an employee files a complaint with the AGO alleging violations of the Wage Act until the date the AGO issues a letter authorizing the employee to bring suit on the employee's own behalf.  Mass. Gen. Laws ch. 149, § 150.

Grove argues in its reply brief, and argued below, that Trindade's Wage Act claim based on his 2016 commission accrued, and the statute of limitations started running, on March 1, 2017.[4]

---

[4]  Grove suggests in its opening brief that the statute of limitations for Trindade's 2016 Wage Act claim commenced on March 17, 2017 -- the date it actually paid Trindade his commission.  It did not take that position before the district court.  In its reply, Grove affirms that it maintains its original position asserted below that the claim accrued on March 1, 2017.

We do not focus on the implications of this back-and-forth because, even if the three-year statute of limitations started running on March 17, 2017, it still would have lapsed before June 2020, when Trindade moved to file the amended complaint asserting the 2016 claim.  Trindade did initially argue that if, as Grove asserts in its opening brief, March 17, 2017, marks the beginning of the statute of limitations period, his claim is timely because all statutes of limitations in Massachusetts were tolled from March 17, 2020, until June 30, 2020, due to the COVID-19 pandemic.  See Mass. Sup. Jud. Ct., Third Updated Order Regarding Court Operations Under the Exigent Circumstances Created by the COVID-19 (Coronavirus) Pandemic, No. OE-144 (June 24, 2020).  But the Massachusetts Supreme Judicial Court's ("SJC's") order tolling limitations periods during the COVID-19 pandemic was issued pursuant to the court's "superintendence authority . . . to oversee 'the administration of all courts of inferior

That is the date that Trindade's commission was due under the
employment contract, which states that Grove shall pay commissions
within sixty days after the end of the relevant calendar year.
The parties agreed below that Trindade's claims were tolled for
five days to account for the time between when he filed a complaint
with the AGO, on March 6, 2019, and when he received his right-
to-sue letter, on March 11, 2019. Accounting for those five days
of tolling, Grove contends that the three-year statute of
limitations period for the 2016 Wage Act claim expired on March 6,
2020. Yet, as it points out, Trindade did not assert this claim
until he moved to amend his complaint on June 15, 2020.
Accordingly, Grove argues, the 2016 Wage Act claim is untimely,
and it cannot be liable on that claim unless the claim relates
back to the original complaint.

---

jurisdiction.'" Dunn v. Langevin, 211 N.E.3d 1059, 1061 (Mass.
2023) (quoting Mass. Gen. Laws ch. 211, § 3 (2012)); see also
Shaw's Supermarkets, Inc. v. Melendez, 173 N.E.3d 356, 358-59
(Mass. 2021). The SJC tolled statutory deadlines as part of its
attempt to "provid[e] guidance to lower courts as to how to conduct
court operations safely amid the ongoing public health crisis."
Dunn, 211 N.E.3d at 1063-64 (quoting Graycor Constr. Co. Inc. v.
Pac. Theatres Exhibition Corp., 193 N.E.3d 1083, 1092 (Mass.
2022)).

Grove therefore contends that the tolling policy does not
apply to an action like Trindade's that was brought in federal
district court. Trindade did not contest this point in his
response/reply brief or at oral argument and thus effectively
conceded it.

As the district court noted, the original complaint, filed on April 15, 2019, was filed well within the three-year statute of limitations period for the 2016 claim. Trindade does not seem to dispute that, if his 2016 Wage Act claim accrued on March 1, 2017, it is time-barred unless the amended complaint relates back to the original complaint. Accordingly, we turn our attention to relation back.

"Under the doctrine of relation back, an amended complaint can be treated, for purposes of the statute of limitations, as having been filed on the date of the original complaint." Pessotti v. Eagle Mfg. Co., 946 F.2d 974, 975 (1st Cir. 1991). When, as here, a plaintiff amends a complaint to add a new claim, Rule 15(c) of the Federal Rules of Civil Procedure provides that an amended pleading relates back to the date of the original pleading if (1) "the law that provides the applicable statute of limitations allows relation back," or (2) "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out -- or attempted to be set out -- in the original pleading." Fed R. Civ. P. 15(c)(1)(A)-(B).

We have explained that this provision "cements in place a one-way ratchet; less restrictive state relation-back rules will displace federal relation-back rules, but more restrictive state-relation back rules will not." Morel v. DaimlerChrysler AG, 565 F.3d 20, 26 (1st Cir. 2009); see also Fed. R. Civ. P. 15 advisory

-14-

committee's note to 1991 amendment (explaining that, under Rule
15(c)(1), if the controlling body of limitations law "affords a
more forgiving principle of relation back than the one provided in
[the federal rule], it should be available to save the claim").
Here, Massachusetts law provides the applicable statute of
limitations, so Massachusetts relation-back law is relevant. See
Coons v. Indus. Knife Co., 620 F.3d 38, 42 (1st Cir. 2010). As we
have recognized, Massachusetts law governing relation back is less
restrictive than federal law; as such, a plaintiff in a diversity
case can invoke Massachusetts law as part of the "one-way ratchet."
See Salmon v. Lang, 57 F.4th 296, 324 n.26 (1st Cir. 2022) (citing
with approval district-court cases relying on Morel in holding
that "whether a diversity-plaintiff's 'state-law claims relate
back is an issue of Massachusetts law'" (quoting Abernathy v.
Dewey, 277 F. Supp. 3d 129, 137-38 (D. Mass. 2017))). Accordingly,
consistent with Rule 15(c)(1)(A), the district court looked to
Massachusetts law to determine whether Trindade's 2016 Wage Act
claim relates back to the original complaint. See 6A Charles Alan
Wright & Arthur R. Miller, Federal Practice and Procedure § 1503
(3d ed. 2018).

        As the district court properly noted, Massachusetts has
"'liberal' rules governing the amendment and relation back of
pleadings." Herrick v. Essex Reg'l Ret. Bd., 861 N.E.2d 32, 35
(Mass. App. Ct. 2007); see also Hogan v. Fischer, 738 F.3d 509,

-15-

518 (2d Cir. 2013) (explaining that Rule 15(c)(1)(A) directs courts to look to "the entire <u>body</u> of limitations law that provides the applicable statute of limitations," not merely the "limitations law's test for relation back").  Underpinning this "liberal approach to the amendment of pleadings, and their retrospective effect," is the theory that "if an action was timely brought at the outset, every consideration ought to be given [to] an amendment which would prevent the plaintiff's claim from being lost if an amendment were not allowed." <u>Aker</u> v. <u>Pearson</u>, 389 N.E.2d 428, 430 (Mass. App. Ct. 1979).

The particular test for relation back is found in Massachusetts Rule of Civil Procedure 15(c), which states that "[w]henever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment (including an amendment changing a party) relates back to the original pleading." Mass. R. Civ. P. 15(c).  The SJC has explained that the rule requires a sufficient "nexus" between a later-asserted claim and the original pleading.  <u>See</u> <u>Weber</u> v. <u>Cmty. Teamwork, Inc.</u>, 752 N.E.2d 700, 717 (Mass. 2001).  It also has interpreted the rule to require that the original complaint provide a defendant with sufficient notice of the wrongdoing alleged in the amended complaint.  <u>See</u> <u>id.</u> at 717–18.

Grove contends that there was neither a sufficient nexus nor sufficient notice here. It argues that Trindade's original complaint focused only on the payment of his 2015 commission, and his amended complaint added allegations based on his 2016 commission. It states that Trindade asserts separate statutory violations based on discrete events, and, therefore, his 2016 Wage Act claim does not arise from the same conduct, transaction, or occurrence as the 2015 Wage Act claim. In addition, Grove contends that the district court erred in finding that the original complaint provided Grove with adequate notice that Trindade would later bring Wage Act claims based on his 2016 commission.

Massachusetts cases do not appear to precisely define the parameters of the "conduct, transaction, or occurrence" standard set out in Massachusetts Rule of Civil Procedure 15(c). And we cannot locate a relation-back case involving the exact circumstances here. We can, though, analogize to the res judicata context, in which Massachusetts courts employ a similar standard. To determine whether two causes of action are the same for the purposes of res judicata, Massachusetts courts "ask whether the two actions arose from the same transaction or series of connected transactions." Laramie v. Philip Morris USA Inc., 173 N.E.3d 731, 745 (Mass. 2021). Because there is more relevant Massachusetts caselaw defining "transaction," as opposed to "conduct" or "occurrence," we focus on whether the 2016 Wage Act claim arose

out of the transaction set forth or attempted to be set forth in Trindade's original complaint.

The SJC has explained that "a 'transaction' generally 'connotes a natural grouping or common nucleus of operative facts.'" Id. at 745-46 (quoting Restatement (Second) of Judgments § 24 cmt. b (Am. L. Inst. 1982)). Massachusetts courts pragmatically determine what factual grouping constitutes a transaction. Saint Louis v. Baystate Med. Ctr., Inc., 568 N.E.2d 1181, 1185 (Mass. App. Ct. 1991). Factors considered are "whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations." Smith v. Smith, No. 111386, 2011 WL 7090711, at *5 (Mass. Super. Ct. Nov. 15, 2011) (cleaned up); see also Baystate Med. Ctr., 568 N.E.2d at 1185. Massachusetts caselaw has further explained that whether a factual grouping constitutes a transaction is "perhaps most straightforward when the claims at issue arise from the same contract," between the same parties, "that was adjudicated in the earlier proceeding." N. Am. Cath. Educ. Programming Found., Inc. v. Clearwire Spectrum Holdings II, LLC, No. SUCV20153118BLS2, 2020 WL 2198090, at *2 (Mass. Super. Ct. Feb 24, 2020).

Applying this understanding of transaction under Massachusetts law, we conclude that Trindade's 2016 Wage Act claim, as asserted in his amended complaint, flows from the same factual

-18-

nexus as his 2015 Wage Act claim.  To be sure, Trindade's amended complaint added allegations concerning different events than those alleged in the original complaint, and there is a temporal gap between the two Wage Act claims.  But that alone does not defeat relation back.  Cf. Rural Fire Prot. Co. v. Hepp, 366 F.2d 355, 361–62 (9th Cir. 1966) (interpreting similar language under the federal rule and holding that an amended complaint seeking unpaid wages owed under an employment contract for one pay period related back to the original complaint seeking unpaid wages for an earlier pay period because the amended pleading arose from the same general transaction, could be established by the same kind of evidence, and did not take the defendant by surprise).  Both claims arise out of the same contract and are related in origin -- the late payment and underpayment of commissions, in violation of the specific commission formula and deadline for payment set forth in that contract.  For instance, in his original complaint, Trindade alleged that Grove failed to timely pay and underpaid his commission for calendar year 2015, in which he had record profits. Then, in his amended complaint, Trindade asserted that, in both his record-breaking year and the subsequent year, Grove deducted the exact same loss from his total commission amount.  Because of this duplication, he stated, Grove failed to timely pay and underpaid his commission for calendar year 2016.  The 2015 and 2016 claims concern sequential commission payouts in which the

calculation in one year affected the amount received in the following year. And they both focus on the same provisions of the parties' contract: the date on which commissions must be paid and the method according to which commissions must be calculated as set forth in the employment contract. A sufficient nexus therefore exists.

That nexus, however, does not alone resolve the issue of whether the amended complaint relates back to the original complaint. Massachusetts law also inquires into whether the original pleading provided the defendant with adequate notice of the potential new claims.[5] See Weber, 752 N.E.2d at 717–18. The district court found that it was "undisputable that [Trindade's] initial pleading provided [Grove] with adequate notice of the potential new claims" because Grove's "wage and commission payment practices were the entire subject matter of that first complaint." Trindade v. Grove Servs., Inc., No. 19-10717, 2023 WL 2157647, at *8 (D. Mass. Feb. 22, 2023). As Grove correctly points out,

---

[5] Indeed, this notice requirement is tied to the underlying goal of relation-back rules and what distinguishes those rules from the rules governing the joinder of claims and parties. See Wright & Miller, supra, § 1497 (explaining, in the context of federal relation-back law, that "[b]ecause the rationale of the relation-back rule is to ameliorate the effect of the statute of limitations, rather than to promote the joinder of claims and parties," courts determining whether an amended pleading relates back to the initial pleading do not conduct "simply an identity of transaction test"; instead, they also examine "whether the opposing party has been put on notice regarding the claim or defense raised by the amended pleading").

Trindade's original complaint did not mention the payment of his commission for calendar year 2016. Nevertheless, we agree with the district court that the original complaint alleging underpayment and untimely payment of commission in one year sufficiently notified Grove of the potential for claims based on underpayment and untimely payment of commission in the following year, pursuant to the same compensation plan. The fact that Trindade's 2016 Wage Act claim was based in part on Grove's commission calculation for 2015 bolsters this conclusion.

Moreover, allowing Trindade to proceed with his 2016 Wage Act claim would not contravene what the SJC has described as "'the major policy' behind a statute of limitations -- the collection and preservation of evidence." Weber, 752 N.E.2d at 718 (quoting 6 James W. Smith & Hiller B. Zobel, Mass. Rules Practice § 15.9 (1974 & Supp. 2001)). Discovery was still open and ongoing when the district court permitted Trindade to amend his complaint. And the trial in the case did not occur until nearly two years later. Thus, Grove had ample time to gather evidence to refute Trindade's 2016 Wage Act claim. Meanwhile, as a condition of amending his complaint, Trindade was prohibited from seeking any additional written discovery or production of documents relating to that claim.

The timing of the amended complaint distinguishes the circumstances here from those in Weber, a case that Grove relies

-21-

on heavily in arguing that relation back is not permitted.  Indeed, the facts in Weber are so different that it has little application here.  In that case, the plaintiff sought to amend her complaint at the end of trial, right before closing arguments.  Id. at 703-04 (seeking to amend to add a retaliation claim in an employment discrimination case).  In concluding that the new claim she sought to pursue did not relate back to the earlier pleadings, the SJC explained that "at such a late date[,] . . . the defendants had no opportunity to gather and introduce such evidence as was required to refute" her new allegations.  Id. at 718.  By contrast, here, Grove could collect and offer evidence to rebut Trindade's claim well before trial.  In fact, Grove does not point to any harm in collecting evidence or preparing for trial that it suffered because the district court allowed Trindade to amend his complaint.

The Weber court also emphasized that the plaintiff "offered no explanation" for the delay in raising her claim.  Id. But Trindade did offer a reason for amending his complaint to add the 2016 Wage Act claim: he asserted that he did not discover Grove's duplicate deduction until discovery.  Trindade's trial testimony supports that assertion.  He stated at trial that, in contrast to other years, he never received a summary of his commission calculations for the 2015 year in which Grove's deduction was improperly made until discovery in this case.

In addition, permitting Trindade to advance his 2016 Wage Act claim, when the above requirements are satisfied, accords with the goal of Massachusetts' liberal relation-back doctrine: to avoid depriving plaintiffs of a valid claim. See Go Best Assets Ltd. v. Goldings, No. 010577BLS1, 2007 WL 3054814, at *3 (Mass. Super. Ct. Sept. 19, 2007) (finding that, although defendants' argument that they lacked notice of the later-asserted claim had "some force," Massachusetts' policy that "regard[s] indulgently any amendment whose denial would deprive the plaintiff of a claim" weighed in favor of allowing an otherwise untimely claim to relate back (citation omitted)).

Having reviewed the relevant cases, we see no reason to disturb the district court's holding that Massachusetts law permits relation back in these circumstances.[6]

## B. Grove's Challenge to the Damages Award

Having determined that Trindade's 2016 Wage Act claim relates back to his original complaint, we next turn to Grove's argument that Trindade is not entitled to damages. Grove raises several points in contending that the damages award was unsupported by the district court's findings of fact and the evidence. The

---

[6] Because we affirm the district court's relation-back decision on other grounds, we do not address Trindade's argument, made only in a footnote in his opening brief, that relation back is automatic under Massachusetts law once an amendment is allowed, so the district court's order granting his motion to amend should have resolved the relation-back issue.

record amply supports the damages award, so we see no abuse of discretion.

Grove's primary contention is that its payment of the 2016 commission did not violate the Wage Act because Trindade failed to demonstrate the amount of commission that Grove owed him under the contract for that year or demonstrate that Grove owed him any commission at all for that year. As support, it points to the district court's finding that Trindade had "not demonstrated how much in wages he was actually owed in 2016 under the terms of the [contract]." Trindade, 2023 WL 2157647, at *8. Because the Wage Act does not impose a penalty for the late payment of commissions that are not due to an employee, Grove maintains, the damages award was erroneous, and it conflicts with the district court's findings.

Grove, however, expressly conceded below that it owed Trindade a commission for 2016. The only dispute between the parties at trial was which formula applied to calculate that commission. For instance, in its proposed findings of fact and conclusions of law submitted after trial, Grove stated that "[f]or 2016, under its new commission calculation system, Grove owed Mr. Trindade commissions of $146,538." Similarly, it stated that "[f]or 2016 Grove paid Mr. Trindade his $130,000 base salary[,] and he earned $146,538 in performance commission under its new methodology." Grove has waived any argument that the damages award

lacks an evidentiary basis on the ground that it did not owe Trindade commission for 2016.

It is true that, at trial, Grove introduced testimony that Trindade's 2016 net commission under the new formula was more than it would have been under the old formula provided in the employment contract, mainly because the new methodology eliminated deductions based on overhead costs and working capital. But regardless of the differences between what Trindade earned under the new formula and under the old formula, Grove never contested that it did, in fact, owe Trindade a commission for 2016, and it stated below that the commission was due on March 1, 2017. The parties agreed that Grove paid $101,093 in commission after March 1, 2017. Given these undisputed facts, the district court acted within its discretion when it awarded $101,093 as late-paid wages.

Recycling its above arguments, Grove also disputes the district court's award of damages for the 401(k) deductions in 2014 and 2016. But that award too finds sufficient basis in the record. At trial, Trindade claimed that Grove was supposed to fund his 401(k) account with its own money, not with the money he earned through his sales, and that nothing in his employment contract allowed Grove to deduct what should have been its employer retirement contribution from his total commission. Yet Grove insists that, because Trindade failed to establish a definitive amount of commission owed to him for 2014 or 2016, the 401(k)

deductions cannot be an unpaid wage or a breach of contract. But the district court awarded damages for breach of contract as to the 2014 commission after finding that (1) Grove paid Trindade $47,647.46 in sales commission that year, (2) the evidence showed that Grove diverted its 401(k) contribution of $7,041 from Trindade's commission, and (3) such diversion was not permitted by the contract. Grove does not contest those factual findings, and we see no error in the district court's judgment to award damages for breach of contract.[7]

The same is true for the Wage Act claim and the breach of contract claim as to the 2016 commission. Even if Trindade did not carry his burden of proving he was owed additional commission in 2016, Grove admitted below that "[f]or 2016, under its new commission calculation system, Grove owed Mr. Trindade commissions of $146,538, from which it reduced the final payment by $6,759 for a 401(k) contribution." Given this fact, the district court did not abuse its discretion in awarding unpaid wages. Similarly, it did not abuse its discretion in awarding damages for breach of

---

[7] Grove further maintains that the district court erred in awarding Trindade contractual damages for the 401(k) deduction in 2014 because Trindade did not offer evidence that he was harmed by this deduction. But in discussing the same type of deduction in 2016, the district court stated that Trindade was harmed by Grove's decision to divert his commission payment into a 401(k), rather than permitting Trindade to decide how to use his commission, "in light of the penalties generally incurred for early withdrawals of retirement accounts." Trindade, 2023 WL 2157647, at *8. That finding is equally applicable to Grove's 401(k) deduction in 2014.

contract because the 401(k) deduction was not permitted by the contract and Trindade could face penalties for early withdrawal if he wanted to use those funds.

Grove advances one more argument. It asserts that, of the $146,538 it paid Trindade in addition to his base salary in 2016, it paid $38,686 over the course of 2016. That is, it paid $38,686 before the deadline provided in the employment contract, meaning in a timely manner. Grove argues that the district court failed to account for this payment and that there is no proof that Trindade was owed anything more than the $38,686 it timely paid. But Grove never made this argument below, so it is not properly preserved for appeal. Even if it were, it mirrors the arguments above -- that there was no proof that Grove owed Trindade the $101,093 that Grove paid late. As we have explained, Grove admitted below that it owed Trindade $146,538 in commission for 2016, so any claim that it owed him less than that amount fails.

The record evidence amply supports the district court's damages award. Consequently, we reject Grove's challenge.

### C. Trindade's Challenge to the Damages Award

Trindade launches his own challenge to the damages award for the 2016 Wage Act claim. We conclude his challenge also lacks merit.

According to Trindade, the district court erred in not awarding him an additional $146,538 in unpaid wages for 2016. He

-27-

argues that, when Grove calculated his 2016 commission under the new formula, it used a rate of 7.5%, but the employment contract stated that he was entitled to receive his commission at a rate of 15%. Therefore, he contends, he is entitled to double the commission to make up the difference between the amount he was paid and the rate set forth in the contract.

But Trindade cannot establish that the district court abused its discretion in declining to award him additional damages because he did not introduce evidence to support his requested damages calculation. We do not know if the total amount that Grove paid Trindade was more or less than what was required under the contract's formula because Trindade never established the specific amount Grove should have paid under that formula. To put it simply, Trindade failed to prove what he was owed for 2016 under the contract's terms. Without proof demonstrating what that specific amount should be, there was no way for the district court to evaluate whether what Grove paid Trindade exceeded or fell short of that amount. Further, the $146,538 that Grove paid Trindade did not include any of the deductions permitted in the contract. And Trindade offered no estimate of those deductions. So, again, the district court in no way erred in refusing to award Trindade additional damages when he failed to prove if he was owed more or less under the contract's terms.

## IV. CONCLUSION

For all these reasons, we <u>affirm</u> the district court's judgment.